UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
CHRIS APPLEWHITE,

                       Petitioner,                04 Civ. 6153 (PKC)(JCF)

       -against-                        MEMORANDUM
                                                  AND ORDER
MICHAEL McGINNIS, Superintendent for Southport        ADOPTING
Correctional Facility                            REPORT AND
                   Respondent.        <u>RECOMMENDATION</u>
-----------------------------------------------------------------x


P. KEVIN CASTEL, U.S.D.J.


        Petitioner Chris Applewhite, after a jury trial in the Supreme Court of the State

of New York, New York County, was convicted of one count of Assault in the First Degree

under New York Penal Law ('NYPL') § 120.10(1), one count of Criminal Use of a Firearm in

the First Degree under NYPL § 265.09, one count of Criminal Possession of a Weapon in the

Second Degree under NYPL § 265.03, and one count of Criminal Possession of a Weapon in

the Third Degree under NYPL § 265.02(3).  Petitioner was acquitted of the charge of attempted

murder.  On July 7, 1999, Justice Charles Tejada sentenced petitioner to indeterminate terms

of imprisonment, to run concurrently, on the four charges resulting in convictions as follows:

seven to fourteen years on each of the assault and criminal use of a firearm counts; four to

eight years on the second degree criminal possession of a weapon count and three and one-

half to seven years on the third degree criminal possession of a weapon count.  On October

29, 1999, petitioner's sentence on the third degree criminal possession count was reduced to

two and one-third to seven years.


        Petitioner appealed his conviction to the Appellate Division, First Department,

and, by Order dated October 3, 2002, the Appellate Division unanimously affirmed the con-

viction.  <u>People v. Applewhite</u>, 298 A.D.2d 136 (1st Dep't 2002).  Petitioner sought leave to

appeal the Appellate Division's Order to the New York Court of Appeals, and by Order dated

March 27, 2003, leave was denied.  99 N.Y.2d 625 (2003).  Petitioner then moved for recon-

sideration of the denial of leave to appeal, and, upon reconsideration, leave was again denied

on May 30, 2003.  100 N.Y.2d 536 (2003).

On June 22, 2004, petitioner filed, <u>pro se</u>, a timely petition for a writ of habeas

corpus under 28 U.S.C. §2254, referencing his attached state appellate brief, and thus incorpo-

rating the five bases for relief contained therein.  Specifically, petitioner contends that: 1) evi-

dence introduced at trial was seized in violation of his Fourth Amendment rights and should

properly have been suppressed; 2) his right to a fair trial was violated when a prosecution wit-

ness who had been unable either to pick petitioner out of a lineup or identify him in court re-

ferred to him as "the shooter" during his testimony; 3) the trial court's jury instructions were im-

proper in that they included an instruction regarding inference of consciousness of guilt based

on flight from the scene of the crime, when petitioner's identity as the fleeing shooter was in

dispute issue; 4) the trial court improperly refused to instruct the jury on the unreliability of

cross-racial identification testimony; and 5) petitioner's sentence was excessive and unduly

harsh.

On February 9, 2005, I referred the petition to United States Magistrate Judge

James C. Francis IV.  On November 29, 2005, Judge Francis issued a Report and Recommen-

dation ("R&R").  In his R&R, familiarity with which is assumed, after comprehensively setting

forth the facts underlying petitioner's conviction, Judge Francis recommended that I deny the

petition.  In multiple installments, and with the benefit of several requested extensions, peti-

tioner filed objections to Judge Francis's R&R.  His objections and reply papers total ap-

proximately 175 handwritten pages, plus exhibits.  In the course of his submissions, petitioner
makes abundantly clear that he is dissatisfied with the conditions of his confinement in the
New York State correctional facilities.  He repeatedly expresses his opinion that all of those
involved in his arrest and prosecution were engaged in a vast conspiracy to deprive petitioner
of his rights.  He refers to the police as "walking time-bombs in police uniforms" who view Af-
rican-Americans as a "delectable choice of usual suspects to fulfill a chronic thirst of satisfying
monthly arrest quotas," the prosecutor as the "malicious prosecutrix," and some of the state
judges as "hypocrites . . . full of lip service."  In his submissions, he compares and contrasts his
situation, inter alia, to that of, Amadou Diallo,[1] Abner Louima,[2] and the "Long Island Lolita,"
Amy Fisher.[3]  He writes on topics as diverse as the war in Iraq and the 1995 film "The Jerky
Boys,"[4] attempting in each case to draw some relevant parallel to the circumstances underlying
the instant petition.  While the Court acknowledges petitioner's dedication to his task, much of
the rhetorical content of petitioner's submissions is irrelevant to the issues properly before the
Court.

I have carefully reviewed the submissions, and, in light of petitioner's objec-
tions, have conducted a de novo review of the underlying record, including the state court
hearing, trial, and sentencing transcripts.  See 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.
Having done so, I adopt Judge Francis's R&R and deny the petition for a writ of habeas cor-
pus.  I briefly address each of petitioner's claims in turn.

---

[1]    See Locurto v. Giuliani, 269 F. Supp. 2d 368, 393-94 (S.D.N.Y. 2003), rev'd, ___ F.3d ___, 2006 WL
       1130906 (2d Cir. Apr. 27, 2006).

[2]    See United States v. Bruder, 103 F. Supp. 2d 155 (E.D.N.Y. 2000), rev'd in part and vacated in part sub
       nom. United States v. Schwarz, 283 F.3d 76 (2d Cir. 2002).

[3]    See Fisher v. Goord, 981 F. Supp. 140 (W.D.N.Y. 1997).

[4]    See Internet Movie Database, http://www.imdb.com/title/tt0110189/ (last visited May 10, 2006).

## Fourth Amendment Claim

Petitioner seeks relief on the ground that the state trial court improperly denied his suppression motion, in which he claimed that the officers who arrested him lacked reasonable suspicion to conduct a "stop and frisk." Petitioner argues that the gun that was seized from him as a result of that frisk was inadmissible as the fruit of an illegal search or seizure. Judge Francis correctly stated that petitioner may not obtain habeas relief on the basis of an alleged Fourth Amendment violation unless he was denied "an opportunity for full and fair litigation" of the claim in the state courts. See Stone v. Powell, 428 U.S. 465, 494 (1976). A petitioner is denied such an opportunity only "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (citation omitted); see also, e.g., Brown v. Connell, 2006 WL 1132053 at *6 (S.D.N.Y. Apr. 28, 2006).

As noted in the R&R, there is no dispute as to the first prong. New York's procedure for challenging searches and seizures, embodied in its Criminal Procedure Law § 710.10 et. seq., has long been recognized as adequate to constitute a "full and fair" opportunity to litigate Fourth Amendment claims. See Capellan, 975 F.2d at 70 n.1; Hill v. Greiner, 2005 WL 3454737 at *3 (S.D.N.Y. Dec. 15, 2005) ("Procedures to address Fourth Amendment violations in New York are codified in New York Criminal Procedure Law § 710 et seq . . . and meet part (a) of the Capellan test.") (citations omitted). Here, appropriate procedures existed and petitioner availed himself of those procedures. He moved to suppress the evidence and was granted an evidentiary hearing. The motion was denied at the conclusion of the hearing.

(Hrg. Tr. at 100)  In affirming petitioner's conviction, the Appellate Division held that the suppression motion was properly denied, as the stop and frisk was supported by reasonable suspicion.  Applewhite, 298 A.D.2d at 136-37.  As discussed above, the Court of Appeals then denied petitioner's motion for leave to appeal, finding that there was "no question of law presented which ought to be reviewed" by that court.  (Davis Decl. Ex. G)  The Court of Appeals adhered to its denial upon reconsideration.

Petitioner nevertheless contends that this Court should find that there was an 'unconscionable breakdown' in the process because the hearing judge was biased against him and/or predisposed to find in favor of the prosecution on Fourth Amendment issues.[5]  Having reviewed the transcript of the hearing, there is no evidence that Justice Berkman was biased against petitioner.  Petitioner was afforded the opportunity for appellate review of his Fourth Amendment claim.  There was no "breakdown" in the process, and habeas relief is barred by Stone.[6]

Allegedly Prejudicial Testimony

Petitioner claims that he was denied his constitutional rights to due process and a fair trial because a prosecution witness, Christian Valdera, repeatedly referred to petitioner as "the shooter," despite the fact that Valdera had been unable to identify petitioner either in a

---

[5]  While the trial was presided over by Justice Tejada, the suppression hearing was presided over by the Honorable Carol Berkman of the same court.

[6]  In the course of laying out the alleged foundation for his Fourth Amendment claim in his petition, petitioner raises additional points that could arguably be construed as suggesting alternative bases for relief.  Specifically, he suggests that the hearing judge denied a request for a hearing on petitioner's right to a speedy trial pursuant to N.Y. Crim. Proc. Law § 30.30, that the felony complaint lodged against him was "jurisdictionally defective," and that he was denied a hearing on the admissibility of a "show-up" identification made by an individual who did not testify at trial.  To the extent petitioner intended to seek habeas relief on any of these grounds, they are unexhausted and procedurally defaulted, as they were never raised in the state courts, and petitioner has not shown either the requisite cause for the default and prejudice or that failure to consider his claim would result in a fundamental miscarriage of justice (which requires a showing of actual innocence).  See Murray v. Carrier, 477 U.S. 478, 496 (1986).

police lineup following the shooting incident, or in the courtroom. The Appellate Division found that such testimony was not prejudicial, as Valdera testified on direct examination that he did not get a good look at the shooter's face. (Trial Tr. 368) Valdera also testified on direct examination that he was unable to identify petitioner as the shooter at the police lineup, and stated that he likely would not be able to recognize the shooter in court during trial, since he did not get a good look at the time of the incident. (Trial Tr. 373-74) Moreover, as the Appellate Division recognized, defense counsel "fully cross-examined" Valdera, and it was "abundantly clear to the jury that the witness was unable to make an identification." Applewhite, 298 A.D.2d at 137; see Trial Tr. 383-92, 402-05, 409-10.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court exercising habeas jurisdiction may only disturb a state court adjudication if such adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if it "contradicts the governing law" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An unreasonable application of federal law is more than an incorrect application, but the petitioner need not show that all reasonable jurists would agree that a state court determination is incorrect in order for it to be unreasonable. Id. at 409-12. Instead, a federal court should review a state court's interpretation of federal law using a standard of objective reasonableness. Id. at 409. The "in-

crement of incorrectness beyond error . . . need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks and citation omitted). "We must presume the state court's factual findings to be correct and may overturn those findings only if petitioner offers clear and convincing evidence of their incorrectness." <u>Yung v. Walker</u>, 341 F.3d 104, 109 (2d Cir. 2003) (citing 28 U.S.C.§2254(e)).

Under applicable federal law, admission of improper evidence in a criminal trial can only constitute a due process violation where the prejudice is so great that admission of the evidence "violates fundamental concepts of justice." <u>Dunnigan v. Keane</u>, 137 F.3d 117, 125 (2d Cir.) (quoting <u>Dowling v. United States</u>, 493 U.S. 342, 352 (1990)), <u>cert. denied</u>, 525 U.S. 840 (1998). To find such a violation, a court must conclude that the allegedly improper evidence, "viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." <u>Collins v. Scully</u>, 755 F.2d 16, 19 (2d Cir. 1985); <u>see also</u> <u>Harris v. Woods</u>, 2006 WL 1140888 at *37-*38 (S.D.N.Y. May 1, 2006).

Having reviewed the entirety of Valdera's trial testimony, the Appellate Division's conclusion that the references to petitioner as the shooter were not unduly prejudicial is not an unreasonable application of, or contrary to, the relevant federal law. As Judge Francis noted in the R&R (at 18-19), Valdera's testimony, as a whole, made clear that he was unable to see the shooter's face, and could not identify petitioner, either in the lineup or in the courtroom. The other evidence presented at trial, including, for example, the fact that the gun used in the shooting was recovered on petitioner's person, and the identification of petitioner in the lineup by another prosecution witness, Eric Flores, was sufficient such that the absence of the

challenged testimony would not have led a reasonable jury to find reasonable doubt about petitioner's guilt.

Jury Instructions

Petitioner asserts a right to relief based on two different aspects of the jury charge delivered by the trial court. First, he challenges the court's delivery of a "flight" instruction, in which the trial court instructed the jury that <u>if</u> they found that petitioner had fled the scene of a shooting, such evidence could be considered evidence of consciousness of guilt. He also challenges the trial court's failure to give an instruction on the unreliability of cross-race identifications.

An erroneous jury instruction can only form the basis for habeas relief where the error has "so infected the entire trial that the resulting conviction violates due process." <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973). Petitioner contends that the court's instruction on flight–that "[t]estimony that the Defendant fled after the shooting," might permit "an inference that such conduct evidenced consciousness of guilt"–was erroneous because it amounted to the trial court effectively instructing the jury that petitioner was the individual who fled, when, in fact, the identity of the shooter was disputed at trial. The trial judge made clear that, in order to infer consciousness of guilt, the jurors had to believe that it was, in fact, petitioner who fled from the scene. <u>See</u> Trial Tr. at 1113 ("First, your duty is to decide whether evidence of the Defendant's conduct upon which the People rely, if believed by you, does, in fact, evidence a consciousness of guilt on the part of the defendant."). The Appellate Division noted that the jury had "ample evidence upon which to find that defendant was the assailant," and, that, having so found, they could "reasonably have found that the assailant's flight from the scene demonstrated a consciousness of guilt." <u>Applewhite</u>, 298 A.D.2d at 137. This instruc-

tion was directly preceded by instructions which made abundantly clear that the primary question to be resolved was that of the identity of the shooter.

Having reviewed the instructions in their entirety, see Estelle v. McGuire, 502 U.S. 62, 72 (1991), I adopt Judge Francis's careful analysis, and conclude that, in order to return a verdict of guilty, the jury knew that they had first to be convinced beyond a reasonable doubt that petitioner was, in fact, "the right man, the actual perpetrator of the crime." (R&R at 20-22 (quoting Trial Tr. 1109-12)). The inclusion of the trial court's flight instruction did not violate petitioner's right to due process.

Petitioner's claim based on the trial court's refusal to instruct the jury on the unreliability of cross-race identification is measured by the same standard as his claim based on the flight instruction, though petitioner bears an even heavier burden in complaining of the failure to give a particular instruction. See Henderson v. Kibbe, 431 U.S. 145, 154-55 (1977) ("An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law"). Here, based upon my review of the instructions as a whole, the trial court properly charged the jury both on identification testimony generally, and on witness credibility. (Trial Tr. 1104-05, 1109-11) As such, the Appellate Division held that the trial court's refusal was proper under state law. Applewhite, 298 A.D.2d at 137 (citing People v. Jenkins, 166 A.D.2d 237, 238 (1st Dep't), leave to appeal denied, 76 N.Y.2d 1022 (1990)). As noted by Judge Francis (R&R 22-26) and the Appellate Division, there was nothing in the record before the trial court to support petitioner's request for the cross-race identification charge, and courts that have considered such charges have not mandated them in factual situations comparable to that in petitioner's case.

The trial court's refusal to give an instruction regarding the unreliability of cross-race identifications did not deprive petitioner of his right to due process.

Excessive Sentence

Petitioner also claims that he is entitled to habeas relief on the ground that the sentence imposed by Justice Tejada upon petitioner's conviction is excessive and "unduly harsh." Judge Francis correctly concluded that petitioner failed to exhaust this claim and it is thus procedurally defaulted.

To have exhausted state remedies under 28 U.S.C. 2254(b)(1)(A), a petitioner must have "fairly presented" his claims to the highest court of the state. Picard v. Connor, 404 U.S. 270, 275 (1971). A fair presentation requires a petitioner to have presented the court with both the factual and legal bases for his claims. Id. at 276-77. Petitioner must also have made the court aware of the Constitutional nature of the claims that form the basis of his subsequent habeas petition. Daye v. Attorney General, 696 F.2d 186, 194 (2d Cir. 1982) (en banc).

In his December 13, 2002 letter to the New York Court of Appeals seeking leave to appeal, petitioner's counsel explicitly requested leave based of each of the non-sentencing related issues addressed above–the Fourth Amendment issue, Valdera's references to petitioner as "the shooter," and both issues regarding the jury instructions. However, the letter did not seek leave to appeal the issue of the constitutionality of petitioner's sentence. (Davis Decl. Ex. E) Where a petitioner has explicitly requested that the Court of Appeals review certain issues presented to the Appellate Division, to the exclusion of others, the "fair import" of the application for leave is that the other claims have been abandoned. See Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991); Galdamez v. Keane, 394 F.3d 68, 74-75 (2d Cir.),

cert. denied, 544 U.S. 1025 (2005). Even had the Court of Appeals engaged in the exercise of "look[ing] for a needle in a paper haystack," Grey, 933 F.2d at 120, by combing petitioner's Appellate Division briefs for constitutional issues, it would not have found such an issue related to petitioner's sentence, as the only basis asserted for a reduction thereof was New York Criminal Procedure Law § 470.15, which permits an intermediate appellate court to reduce a sentence in the interests of justice. Thus, the Court of Appeals could not have been fairly presented with any constitutional claim based on petitioner's sentence.

Though petitioner failed to exhaust any constitutional claim based on an excessive sentence, because he is permitted no further opportunity to raise such a claim in the state courts, the claim is procedurally defaulted, and cannot be reviewed by this Court, as petitioner has not made the required showing of cause and prejudice nor shown that failure to review his claim would result in a fundamental miscarriage of justice, as he is actually innocent. See Murray v. Carrier, 477 U.S. 478, 496 (1986); R&R at 27-29.

Even were I to find the excessive sentence claim exhausted and not procedurally defaulted, it would not entitle petitioner to relief, as the sentence imposed was within the range prescribed by state law. See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); Harris, 2006 WL 1140888 at *39, *39 n.52 (collecting cases).

Conclusion

Having reviewed the petition, the submissions in support and opposition, the state court transcripts and petitioner's objections, I find Judge Francis's R&R to be well reasoned and thoroughly grounded in law.

As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253; Lozada v.

United States, 107 F.3d 1011, 1016-17 (2d Cir. 1997), abrogated on other grounds by United

States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997). The Court certifies pursuant to 28

U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. See

Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917 (1962).

The Report and Recommendation is adopted in its entirety, and the petition is

DENIED. The Clerk is directed to enter judgment accordingly.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
May 15, 2006